413 F.Supp. 1321 (1976)
Application of the UNITED STATES of America in the matter of an order AUTHORIZING the INTERCEPTION OF WIRE COMMUNICATIONS.
Misc. No. 75-603.
United States District Court, E. D. Pennsylvania.
May 28, 1976.
*1322 *1323 *1324 John Rogers Carroll, Philadelphia, Pa., for movant.
J. Clayton Undercofler, III, U. S. Atty., Joel M. Friedman, Donald F. Manno, Sp. Atty., Dept. of Justice, Philadelphia, Pa., for U. S. A.

OPINION AND ORDER
FOGEL, District Judge.
We are asked to rule upon a motion made pursuant to 18 U.S.C. § 2518(8)(d); this particular provision pertains to electronic surveillance and constitutes a part of the measures enacted by the Congress in Title III of the Omnibus Crime Control and Safe Streets Act of 1968. Because the case law with respect to Section 2518(8)(d) is in an early stage of evolution as to the standards to be applied by the District Court in releasing information which flows from the fruits of authorized electronic surveillance, we believe that it is important to focus upon the reasons for our determination in this case, particularly in the absence of any decision with respect to this issue by the Court of Appeals for this Circuit. Movant, through his attorney, seeks to inspect the following materials which have been obtained as a result of the application to this Court and the ensuing wiretap authorization order signed by us on July 29, 1975: (1) the recordation on tape of all communications intercepted pursuant to the July 29th Order to which movant was a party; (2) all written transcripts of these communications; (3) the Order of July 29, 1975; and (4) the applications, together with the accompanying affidavits and other papers which were filed by the United States in connection with the July 29th Order.
Movant, pursuant to an Order of this Court dated November 3, 1975, was served with an inventory relating to the authorization Order of July 29, 1975; the inventory stated, inter alia, that movant was named in the July 29th Order and/or his conversations had been intercepted.[1] He then filed *1325 this motion under 18 U.S.C. § 2518(8)(d), which deals with the inventory procedure and related disclosure motions; the pertinent part of that provision states the following:
Within a reasonable time but not later than ninety days after the filing of an application for an order of approval [authorizing interception] . . ., the issuing . . . judge shall cause to be served, on the persons named in the order or the application, and such other parties to intercepted communications as the judge may determine in his discretion that is in the interest of justice, an inventory which shall include notice of
(1) the fact of the entry of the order or the application;
(2) the date of the entry and the period of authorized, approved or disapproved interception; and
(3) the fact that during the period wire or oral communications were or were not intercepted.

The judge, upon the filing of a motion, may in his discretion make available to such person or his counsel for inspection such portions of the intercepted communications, applications, and orders as the judge determines to be in the interest of justice. On an ex parte showing of good cause to a judge of competent jurisdiction the serving of the inventory required by this subsection may be postponed. (emphasis supplied).
A grand jury investigation was then and is now still presently in progress relative to the events and circumstances which led to the grant of the wiretap authorization Order of July 29th. Movant, who has the status of neither a defendant nor a subpoenaed witness in connection with this investigation, bases his claim for discovery of the requested material at this time on four grounds: first, he argues that the United States, through the failure to request an extension of time before the filing of the inventory, as permitted by Section 2518(8)(d), and its acquiescence in the service of the inventory which flows therefrom, has "in effect" admitted that it is timely to discuss the subjects of the interception; second, movant avers that he may, on the basis of evidence obtained through the wiretap, be the subject of prosecution by the United States, and therefore contends that he has a right to know the nature of such prospective charges; third, he urges that 18 U.S.C. § 2515 provides that evidence obtained as a result of illegal electronic surveillance must be suppressed in any judicial proceeding, including grand jury proceedings; movant claims that because he may be subpoenaed to appear before the grand jury, he has the right to examine the wiretap materials in order to determine whether illegal surveillance was in fact conducted by the Government, and if so, to be in a position to move for suppression of the fruits of such surveillance; fourth, and finally, movant cites 18 U.S.C. § 2520, which grants a right to civil damages for illegal electronic interception, and argues that he has a right to determine now whether any basis exists for such a civil suit, since the statute of limitations is running with respect to this potential claim.
The United States, in opposing the motion, states that disclosure of the requested information at this time would severely inhibit the grand jury investigation now in progress; the Government also emphasizes the current status of movant as neither a defendant nor a subpoenaed witness in further support of its request that we deny the motion.
After a careful review of the contentions of the parties, and an examination of Section 2518(8)(d), its legislative history, and relevant case law, we conclude that, at this juncture, the interest of the Government in maintaining secrecy in the grand jury proceedings outweighs movant's interest in discovery of the requested materials. Accordingly, we find that disclosure at this time is not "in the interest of justice"; the motion will therefore be denied.
Our reasons follow:

*1326 I. PROCEDURAL HISTORY OF THE CASE
On July 29, 1975, upon the application of Donald F. Manno, an attorney for the United States Department of Justice, and an authorized "investigative or law enforcement officer" within the meaning of 18 U.S.C. § 2510(7), this Court entered an Order, pursuant to Section 2518, permitting the interception of certain wire communications; the interceptions were to be executed as soon as practicable, and were in no case to extend beyond twenty days after the Order was signed, 18 U.S.C. § 2518(5); the decree also contained the minimization clause required by Section 2518(5).[2] The Order directed Mr. Manno to report to the Court with respect to the progress of the surveillance on the fifth, tenth, and fifteenth days of the period.
The Government in fact began to intercept communications on July 31, 1975, and terminated the operation on August 12, 1975. Reports were furnished by the Government on August 4th, August 8th, and a Final Report was submitted on August 13th. On November 3, 1975, pursuant to Section 2518(8)(d), this Court caused to be served on forty-five persons, all of whom were either named in the July 29th Order, or were parties to intercepted communications, an inventory Order which recited (1) the fact of the entry of the wiretap authorization Order; (2) the date of the Order; (3) the period of authorized interception; and (4) the fact that wire communications were in fact intercepted during the period between July 31, 1975, and August 12, 1975. Movant, one of the forty-five persons upon whom the inventory was served, subsequently filed the motion for disclosure now before us.

II. THE CONTENTIONS OF THE PARTIES

A. The Service of the Inventory

Movant's first argument for disclosure centers on the failure of the Government to seek an order postponing the service of the inventory. Section 2518(8)(d) permits the judge to grant such postponement on an ex parte showing of good cause. Since the Government did not seek such an extension in this case, movant argues, it cannot now claim that secrecy is vital to the continued effectiveness of the grand jury investigation. Rather, he urges, by willingly allowing the information contained in the inventory to become known to movant and forty-four other persons, the Government has admitted that secrecy is no longer required. The Government knew, contends movant, that the service of the inventory would give all of those persons who were served standing to seek disclosure under Section 2518(8)(d), and the Government's claim of prejudice is therefore untenable.
We do not believe this argument is valid. Movant fails to discern the critical difference between the information contained in the inventory, and the far more comprehensive detail incorporated in the materials he now seeks to inspect. The inventory required by Section 2518(8)(d) need inform the appropriate parties only of the following: (1) the fact that the application was made and the order issued; (2) the date of that Order and the period of authorized surveillance; and (3) the fact that during the period interceptions were or were not made. This bare outline of information stands in marked contrast to the sweeping data which is contained in the application, the Order, and particularly, in the communications themselves. To cite just one aspect, *1327 18 U.S.C. § 2518(1)(b) requires that the application for a wiretap order contain:
[A] full and complete statement of the facts and circumstances relied upon by the applicant, to justify his belief that an order should be issued, including (i) details as to the particular offense that has been, is being, or is about to be committed, (ii) a particular description of the nature and location of the facilities from which or the place where the communication is to be intercepted, (iii) a particular description of the type of communications sought to be intercepted, [and] (iv) the identity of the person, if known, committing the offense and whose communications are to be intercepted.
It is obvious that inspection of the application itself would provide movant with substantial knowledge which he presently does not possess; it would disclose the substantive basis of the criminal investigation then and now being conducted. Inspection of the Order and actual communications would further reveal the evidence upon which the investigation is based. It defies logic to claim that the Government cannot rightfully be concerned with secrecy, merely because it acquiesced in the service of the inventory. By the filing of his motion, movant has admitted that the information contained in the inventory is wholly insufficient to prepare adequately for a grand jury proceeding, a potential criminal prosecution, or a potential civil suit based upon illegal surveillance. Therefore, it is quite reasonable to argue, as the Government does, that while service of the inventory does not jeopardize the present grand jury investigation in any manner, the disclosure of the material requested by movant would virtually curtail that investigation.
Indeed, to find that the Government has waived its claim of prejudice would be tantamount to imposing a penalty for following the general mandate of Section 2518(8)(d). The intent of Congress, in requiring the service of the inventory, was to prevent the Government from engaging in electronic surveillance upon an individual without that individual ever learning of it, as is made crystal clear by the legislative history of this section:
[T]he intent of the provision [requiring the inventory] is that the principle of postuse notice will be retained. This provision alone should insure the community that the techniques are reasonably employed. Through its operation all authorized interceptions must eventually become known at least to the subject. Senate Report No. 1097, 1968 U.S.Code Cong. & Admin.News, p. 2194.
While postponement of the service of the inventory may be obtained by a showing of good cause, Congress clearly intended that the inventory be served without undue delay. The Government's position was, and is, that the service of the inventory created no prejudice to the grand jury investigation. Accordingly, the Government, quite properly, made no objection to the filing of the inventory Order; the normal procedure under Section 2518 was thereby followed. Movant would have us penalize the Government because it followed the mandate of the Act. To hold as movant argues would lead to the very vice which Congress wished to avoid; if the filing of the inventory automatically triggered disclosure of all of the materials, this certainly could lead to administrative invention of "good cause" as a means of avoiding that result. Good faith compliance with the Act is desired, and can only be achieved if that compliance does not lead to the bizarre results which movant urges upon us in this case. Such casuistry cannot stand the light of day. Accordingly, we reject movant's first ground for relief.

B. Potential Criminal Prosecution

Movant's second argument also lacks validity. He avers that the inventory has put him on notice that he may be the subject of criminal investigation and prosecution, and that he has a "right to know what any such prospective charge may be". (Motion, ¶ 4). Movant fails to cite any legal authority in support of this proposition, and our own research has disclosed none.
We submit there is no basis for this contention. Whether movant is the subject of future prosecution based upon the current *1328 grand jury investigation remains an entirely hypothetical question. We believe his interest in determining the degree of his involvement in the investigation is manifestly outweighed by the Government's interest in preventing prejudice to this investigation through premature disclosure of the events and circumstances surrounding it. At this point in the grand jury proceedings, there has been testimony from several witnesses; the Government expects to grant immunity to others, and also anticipates that indictments will be returned; however, the Government avers that disclosure to movant of the requested material "would reveal the identity of individuals and transactions heretofore not publicly known", which would "severely inhibit if not completely frustrate" this grand jury probe. (Affidavit of Donald F. Manno, December 10, 1975.)
Section 2518(8)(d) grants to the judge wide discretion in determining whether disclosure is in the interest of justice. The importance of assuring that grand jury proceedings remain secret and free from prejudice must be found dominant to the right of the individual to discover wiretap material for purposes of determining whether he may or may not be the subject of prosecution in futuro. Accordingly, we reject the second contention of movant.

C. Potential Grand Jury Subpoena

Movant's third basis upon which relief is sought, potential appearance before the grand jury, was presented for the first time in response to the Government's memorandum in opposition to the motion for disclosure. The Government has placed great reliance on the decision of the Second Circuit Court of Appeals in In re Persico, 491 F.2d 1156 (2d Cir.) cert. denied, 419 U.S. 924, 95 S.Ct. 199, 42 L.Ed.2d 158, rehearing denied, 419 U.S. 1060, 95 S.Ct. 645, 42 L.Ed.2d 657 (1974); movant's third contention is the product of certain language in that case.
In Persico, supra, the appellant had been held in civil contempt for his refusal to answer a question before a grand jury. The basis for this refusal was his allegation that the question was the product of illegal electronic surveillance. Appellant, by a motion to suppress, had then claimed the right to inspect the wiretap orders and applications in order to determine whether the surveillance had been illegal, and if so, to avail himself of the exclusionary terms of 18 U.S.C. § 2515, and rightfully refuse to answer the disputed question. He relied upon the decision in Gelbard v. United States, 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972), which had held that Section 2515 permitted a recalcitrant grand jury witness to raise the defense, in a contempt proceeding, that the subject question was the fruit of electronic surveillance which was concededly unlawful.
The Persico court held that the appellant was not entitled to inspection of the wiretap materials, and could not litigate the legality of the surveillance in the context of the grand jury proceedings. At the heart of this decision was the concern of the court that grand jury proceedings not be subject to obstructive delay due to the protracted litigation of suppression motions while the grand jury proceedings are in progress. In reaching its result, the Court relied on the legislative history of 18 U.S.C. § 2518(10)(a); that statute defines the class of persons entitled to make a motion to suppress wiretap evidence. In Senate Report No. 1097, 1968 U.S.Code and Admin. News, p. 2195, Congress stated:
Paragraph (10)(a) provides that any aggrieved person, as defined in section 2510(11) . . . in any trial hearing or other proceeding in or before any court department, officer, agency, regulating body or other authority of the United States, a State, or a political subdivision of a State may make a motion to suppress the contents of any intercepted wire or oral communication or evidence derived therefrom. This provision must be read in connection with sections 2515 and 2517, . . . which it limits. It provides the remedy for the right created by section 2515. Because no person is a party as such to a grand jury proceeding, the provision does not envision the making of a *1329 motion to suppress in the context of such a proceeding itself. Normally, there is no limitation on the character of evidence that may be presented to a grand jury, which is enforcible by an individual. [citation omitted]. There is no intent to change this general rule. It is the intent of the provision only that when a motion to suppress is granted in another context, its scope may include use in a future grand jury proceeding.
The Persico court commented on this language in the following fashion:
As noted, though Congress prescribed that illegal wiretap evidence must be excluded from all grand jury proceedings, hearings to suppress evidence were not to be permitted during such proceedings. These seemingly inconsistent policy determinations can be reconciled only by interpreting the statute as requiring exclusion only when it is clear that a suppression hearing is unnecessary, as when the Government concedes that the electronic surveillance was unlawful or when the invalidity of the surveillance is patent, such as, for example, when no prior court order was obtained, or when the unlawfulness of the Government's surveillance has been established in a prior judicial proceeding. In re Persico, 491 F.2d 1156, 1161 (2d Cir. 1974). (emphasis supplied).
Thus, the Government claims that if Persico, a subpoenaed witness adjudicated in contempt, was not entitled to inspection of wiretap materials, then clearly movant, who is neither a defendant nor a subpoenaed witness, should be denied disclosure.
Movant, however, rests his argument upon the italicized language from Persico quoted above. He argues that he may be subpoenaed to testify before the grand jury, and may be asked questions which are the product of the electronic surveillance authorized in the July 29th Order. Since the Persico decision will prevent him from raising the legality of the surveillance at that time, movant appears to argue that this motion should be considered a prior judicial proceeding within the meaning of the Persico language.
If inspection is granted, movant avers he will be able to determine whether or not the Order was based upon probable cause, and also if the Government properly observed the minimization requirement of that Order. He will then be in a position to argue the illegality of the surveillance and to seek a suppression order before his testimony is required before the grand jury; thus he concludes, if we follow that procedure, there need be no disruption of those proceedings.
While movant's arguments may have the superficial appearance of logic, when those contentions are analyzed, a two-pronged flaw is exposed: first, he has not been called before the grand jury, one that has been in existence since February 19, 1975, nor is there any indication that he is about to be or, indeed, will ever be called. Hence, this head of his claim for relief is based upon a highly conjectural and speculative assumption.
The second prong of the flaw is reinforced by the firstthat is, the vital need for secrecy in connection with grand jury proceedings.
Judge Becker, of this Court, accurately summarized the rationale behind this policy in his decision, In re William Pflaumer & Sons, Inc., 53 F.R.D. 464, 469-470 (E.D.Pa. 1971).
The policy of secrecy surrounding grand jury proceedings reaches far back into the history of that institution. The reasons for that policy are generally regarded to have been set forth in United States v. Amazon Industrial Chemical Corp., 55 F.2d 254, 261 (D.Md.1931); (1) to prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberation, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before the grand jury and later appear at the trial of those indicted by it; (4) to encourage *1330 free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect the innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt.

The wisdom of this policy of secrecy and of the reasons which underly it are most obvious while the grand jury is conducting its proceedings. (emphasis supplied).
Were we to accept movant's reading of Persico, the consequence would once again be a bizarre one. In effect we would be saying that the very service of the inventory, eo ipso, would trigger the right in the party upon whom it is served to violate the secrecy of ongoing grand jury proceedings through the mechanism of filing a § 2518(8)(d) motion for disclosure. Such a result would be a gross distortion of Persico, a decision grounded in large part upon a proper reverence for the smooth functioning of the grand jury. We therefore find that a motion filed pursuant to 18 U.S.C. § 2518(8)(d) seeking disclosure of electronic surveillance material does not constitute a "prior judicial proceeding" within the meaning of the Persico case.
Movant also seeks support from the decision of the First Circuit Court of Appeals in In re Lochiatto, 497 F.2d 803 (1st Cir. 1974), which was decided subsequent to Persico. The Lochiatto court was faced with a situation virtually identical to that in Persico: grand jury witnesses who had been granted immunity were held in contempt after refusing to answer questions which they asserted were the fruit of illegal surveillance; they claimed the right both to assert this defense in the contempt proceedings and to obtain full disclosure of the wiretap material for the purpose of supporting their contention that illegal surveillance had been conducted by the Government. The court recognized that this argument demanded that it weigh three competing considerations: (1) a concern that grand jury proceedings not be unduly interrupted; (2) the need for secrecy due to the often sensitive nature of electronic surveillance material, as well as the concern that the grand jury investigation not be prejudiced by unwarranted and premature disclosures; and (3) the right of a defendant in a contempt proceeding to assert the defense of the illegality of the evidence obtained, as per the provisions in 18 U.S.C. §§ 2515, 2518(10)(a). The court, granting more liberal access to the materials than did the court in Persico, supra, directed that the question of disclosure be resolved in the following manner:
There should be an opportunity for inspection of these limited materials: the authorized application of the Attorney General or his designate, 18 U.S.C. § 2516(1), the affidavits in support of the court order, the court order itself, and an affidavit submitted by the government indicating the length of time the surveillance was conducted. No evidence need be provided the defendant for the purpose of litigating the issues of truth of statements made by affiants or the "minimization" of federal officials in monitoring conversations.
If the government does not object upon grounds of harm due to breach of secrecy, the defendant is entitled to access to these materials in order to develop his defenses. If the government interposes an objection on secrecy grounds, the district court must determine whether the secret information can be successfully deleted or summarized and access to the excerpted material granted. [citations omitted]. If the district judge, in his discretion, determines that so much of the material is of a sensitive nature that revelation of any of it would prejudice the government, the court must then review this material in camera to determine the constitutional and statutory validity of the application and the court order based on the warrants, and compliance by the government with the court ordered time limits on surveillance. In re Lochiatto, 497 F.2d 803, 808 (1st Cir. 1974).
Any meaningful analysis of this rule calls for a review of the context in which it arose, and the situation to which it specifically *1331 applies, one completely distinguishable from that in the instant case. In Lochiatto (and in Persico) defendants had been convicted of contempt and were subject to immediate penalties; thus the adversary nature of the proceeding was clear. The interest of the defendants to be weighed was the right to present a full defense to a contempt citation, and the court fashioned a solution which would protect that interest to the greatest degree possible, while not unduly prejudicing either the government or the grand jury. Against this backdrop the status of movant stands in stark contrast: he may be the subject of the grand jury investigation; he may be subpoenaed to testify before that grand jury; if called, he may be asked questions which he will allege are the fruit of the government surveillance. As noted previously, the dissimilarity between the two situations is so striking that we do not believe that the court in Lochiatto intended that the procedures mandated by that decision be applicable to disclosure motions brought under Section 2518(8)(d); indeed, that section was not even before the court for consideration.
While the issue before us is quite distinct from that presented to the Lochiatto court, a fact which should obviate the necessity for considering that decision, we nevertheless believe that the procedures outlined in Lochiatto provide a just and rational standard for the exercise of the discretion granted to us by Congress under Section 2518(8)(d).[3]
Modern techniques of electronic surveillance have created the potential for wholesale invasion of individual privacy; these devices at the same time are an important aid to the government in the detection of crime. Title III thus represents an attempt to strike what is clearly a balance through stringent regulation of the uses of electronic surveillance in order to achieve the dual purpose of protecting individual privacy, while permitting limited government surveillance in accordance with uniform standards. See Senate Report No. 1097, 1968 U.S.Code and Admin.News, p. 2153.
Section 2518(8)(d) is essentially directed to the first of these concerns, that of the protection of individual privacy. The legislative history states that the requirement of the inventory "should insure the community that the techniques [of electronic surveillance] are reasonably employed." Senate Report No. 1097, 1968 U.S.Code and Admin. News, p. 2194. Commenting on the inventory procedure the A.B.A. Project on Standards for Criminal Justice, Standards Relating to Electronic Surveillance states:
The principle, however, should itself always remain that post-use notice would have to be given at sometime. The possibility of surreptitious surveillance is, of course, the most telling objection to any system of permissive use. . . . The provision constitutes, in short, a key element in the system of checks and balances envisioned by the standards to prevent abuse and win the confidence of the community that the techniques are fairly employed. Id. at § 5.15.
Based upon this language, we recognize that movant, as a party whose communications have been intercepted, has an interest in determining the degree to which his privacy has been invaded. However, it is significant that the Congressional language commented upon above refers to the purpose of the inventory procedure; that issue is markedly different from the one presented by movant's motion in which he seeks disclosure of the application, Order, *1332 affidavits, and the results of the surveillance itself.[4] The need of the government for secrecy is clearly far more compelling and persuasive in its resistance to the publication of this information, than would be an attempt to resist publication of the limited statement contained in the inventory that surveillance has been conducted. We believe that Congress recognized this distinction as a basis for passage of Section 2518(8)(d), thus conferring wide discretion upon the court in the resolution of motions for such disclosure.
Accordingly, we conclude that the proper exercise of our discretion calls upon us to weigh the following factors: (1) the congressional concern for the individual whose communications have been intercepted; and (2) the quantitative difference between that detail which is set forth in the inventory, and the material sought by this disclosure motion. The second point limits the first; the balancing of interests sought by Title III requires us to focus sharply upon the government's need for secrecy when the information sought goes beyond the bare essentials set forth in the inventory itself.
Of course, these principles can serve only as general guidelines; the ultimate exercise of this discretionary power must be bottomed upon the particular facts before us. See United States v. Cafero, 473 F.2d 489, 500-01 (3d Cir. 1973). In this case those facts are not complex; movant has had communications intercepted, but as yet has suffered no adverse consequences due to such interceptions, beyond the invasion of privacy which electronic surveillance inevitably entails. His status as a potential subpoenaed grand jury witness subject to questions based on government surveillance remains, as noted, entirely hypothetical and speculative; likewise, his status as a potential criminal defendant is equally as speculative (Section B supra). Moreover, the right to bring a civil suit under 18 U.S.C. § 2520 based upon illegal surveillance, should cause exist for such a suit, will not be foreclosed if disclosure is denied now; (see Section D infra). In opposition to disclosure, the Government has claimed by memorandum and affidavit that an ongoing grand jury investigation will be thwarted should publication of the wiretap material be made at this stage of the proceedings.[5]
In the motion, and supporting and opposing memoranda and affidavit, "the interest of justice" appears clearly enough to direct that the motion for disclosure be denied at this time, in light of the Government's statement that the grand jury investigation is still in progress and would be hampered by such disclosure. However, we feel constrained by the language of Section 2518(8)(d), and its evident concern for the privacy of the individual as an end in itself, to go beyond the briefing submitted by both parties. We do not believe our discretion would be properly exercised were we to accept, without further investigation, the claim of the Government that the need for secrecy outweighs movant's interest in discovering the degree to which the government has intruded into his private affairs.
We therefore believe that, in the context of the case before us, the test enunciated by the First Circuit Court of Appeals in the Lochiatto case, supra, is a proper means for determining whether any disclosure to movant is warranted in the interest of justice. In applying this test, however, consonant with the significant difference between the status of the Lochiatto defendants and that of movant, described supra, we have demanded *1333 of the Government a lesser showing of prejudice than was directed by the court in Lochiatto.
Applying this modified standard, we note initially that the Government has indeed objected to disclosure based upon harm due to breach of secrecy. We have therefore inspected the following materials in camera: the application of the wiretap authorization; the affidavits in support thereof; the July 29th Order; the five day report, the ten day report, and the final report, all submitted by the Government with respect to the surveillance conducted pursuant to the July 29th Order. We have determined that all of the material contained in these documents is of such a sensitive nature that revelation of any of it would prejudice the Government, in connection with the grand jury investigation now in progress.
Having made this determination, we turn next to the constitutional and statutory validity of the application and order. We find, as we did prior to signing the authorization order on July 29th, that the application for the wiretap authorization comports fully with the requirements of 18 U.S.C. § 2518(1).[6] We further find that the July 29th Order is fully in accord with the standards enunciated in 18 U.S.C. § 2518(3)-(6).[7] Specifically with respect to *1334 § 2518(5), the Order limited the authorized period of surveillance to twenty days, and required that interceptions be minimized. We have also determined that, based upon examination of the five and ten day reports and the final report, the Government complied with the court ordered time limit of twenty days, and that interceptions were minimized in order to prevent the interception of communications not authorized by the Order.
Having thus concluded that movant's potential appearance before the grand jury does not merit disclosure under our somewhat stricter application of the Lochiatto standards, we will reject movant's third ground for relief.

D. Potential Civil Suit and the Statute of Limitations

Movant's final argument is directed toward the possibility of a civil suit pursuant to 18 U.S.C. § 2520, based upon illegal interceptions which may have been made by the Government, the result of either an invalid authorization order, or the violation of a valid order. Movant avers that one purpose of permitting a § 2518(8)(d) disclosure motion is to enable a party upon whom an inventory has been served to determine whether any basis exists for the recovery of civil damages under § 2520. Movant claims that disclosure must be permitted in order to grant him the benefit of § 2520, for clearly no suit is possible without access to the wiretap materials. With respect to the question of why disclosure is warranted now, movant argues that any claim for illegal interception will have arisen during the period of authorized surveillance, and the statute of limitations is presently running on this potential action; therefore, should disclosure be denied, movant may never be able to avail himself of the benefit of § 2520.
This contention must be recognized as two-pronged: first, if movant has been the subject of an illegal interception, then he has already suffered damage recoverable under § 2520, and he should not be compelled to wait to obtain relief; second, the fact that the statute of limitations is running may preclude movant from ever obtaining relief.
Therefore, in considering movant's argument, we must first examine the relationship between Section 2518(8)(d) and Section 2520, independent of the statute of limitations argument. We agree with movant that the intent of Congress in permitting a motion for disclosure under § 2518(8)(d) was in part to provide a party with the ammunition necessary for a § 2520 civil suit. As stated in the A.B.A. Standards, supra:
When an individual receives the inventory he will, moreover, than be in a position . . . to recover, where appropriate, civil damages. Id. at § 5.15.
*1335 However, while we recognize that Congress enacted Section 2520 with the belief that illegal interception in and of itself caused sufficient injury to an individual to merit the recovery of damages, Section 2518(8)(d) nevertheless gives the court wide discretion in balancing the right of the individual to bring suit with the interest of the government in secrecy, should the government make such a claim. Specifically, it is principally a question of timing: is the government's need for secrecy of sufficient import to justify temporarily withholding from the individual the evidence which could enable him to obtain remuneration for damages already suffered?
In resolving this question in the case at bar, we have again applied the Lochiatto test discussed in the previous section. We note initially our finding supra that the July 29th Order comported with the requirements of Section 2518; this resolves the question, for our purposes, of any civil suit based upon an illegal order. With respect to the merits of any suit for violation by the Government of the terms of the July 29th Order, we will make no finding. We determine only that movant's interest in obtaining the wiretap material at this time, for the purpose of the preparation and commencement of a civil action, is outweighed by the possible prejudice to the grand jury investigation which we have found could be the result of such disclosure; (see Section C supra). Moreover, in connection with this aspect of his request, we reiterate our finding, pursuant to the Lochiatto test, that the wiretap application, affidavits, Order, and length and minimization of surveillance were all in accordance with the requirements of Section 2518.
The final question with which we deal is the proposition that the statute of limitations is running on a potential civil suit. Such a suit may be brought for illegal interception, 18 U.S.C. § 2520; movant avers that such a cause of action necessarily must have arisen during or proximate to the period of authorized surveillance, and the claim has thus already accrued for purposes of the applicable statute of limitations.[8]
This contention may be disposed of by reference to the broad rule that whenever some paramount authority prevents a person from exercising his legal remedy, the statute is tolled for that period during which he has been so thwarted. Braun v. Sauerwein, 77 U.S. (10 Wall.) 218, 19 L.Ed. 895 (1870); Davis v. Wilson, 349 F.Supp. 905 (E.D.Tenn.) aff'd mem., 471 F.2d 653 (5th Cir. 1972); 51 Am.Jur.2d, Limitation of Actions § 140 (1970). It would be manifestly unjust to hold that the clock is running on movant's cause of action during a period when this court and the Government have prevented him from obtaining the information necessary to bring that claim. We do not believe that it was the intent of Congress in enacting §§ 2518(8)(d) and 2520 to fashion this type of draconian legislation. To hold that the limitations period is running on any potential civil claim during the period when a prospective claimant is prevented by court order from discovering the wiretap materials he needs in order to pursue such a claim would produce just such a result. Specifically, movant, in the case at bar, may rely upon our decision that the statute of limitations must and will be suspended as to any civil cause of action he may have under this Act until such time as he is able to obtain the information necessary to ascertain the viability of civil suit under Section 2520. On this basis we reject movant's final ground for relief.

CONCLUSION
Accordingly, for all of the reasons set forth in this Opinion, we will deny movant's motion on all scores, and appropriate Orders will be entered.
NOTES
[1] We also have before us in this matter the motion for disclosure of another party served with the inventory of November 3rd; this motion was filed by another movant, through his attorney, Thomas B. Rutter, Esq. Because this motion requests substantially the same relief as that requested by the movant represented by John R. Carroll, Jr., Esq., and does not present any contention and basis which was not presented by Mr. Carroll, that motion will also be decided on the grounds set forth in this Opinion.
[2] This section provides in relevant part:

Every order and extension thereof shall contain a provision that the authorization to intercept shall be executed as soon as practicable, shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter, and must terminate upon attainment of the authorized objective, or in any event in thirty days.
[3] We recognize that the Fifth and Ninth Circuits have questioned the more liberal disclosure required by Lochiatto than by Persico, and have chosen to follow the Second Circuit's reasoning in the Persico decision. In re Grand Jury Proceedings, 522 F.2d 196 (5th Cir. 1975); Droback v. United States, 509 F.2d 625 (9th Cir. 1974), cert. denied, 421 U.S. 964, 95 S.Ct. 1952, 44 L.Ed.2d 450 (1975). Both of those cases dealt with a situation similar to Persico and Lochiatto, namely, a recalcitrant grand jury witness who had been adjudged in contempt. Since this is not the case before us, because movant's status is sharply distinguishable from that of a witness who has been held in contempt, we need not make a choice between the Persico and Lochiatto rules.
[4] The legislative history of Section 2518(8)(d) is silent with respect to motions for disclosure; there is no language, nor are there any hypothetical examples providing guidance with respect to situations in which a motion should be granted or denied. The absence of such language, we believe, supports our finding that Congress intended that the widest parameters of discretion be exercised by the judge in deciding these motions, consonant, of course, with the overall policy of Title III.
[5] The continuing opposition of the Government to disclosure was reaffirmed in a supplemental memorandum submitted on May 14, 1976. In that memorandum, the Government avers that disclosure to movant would indicate "both the direction and pattern of the ongoing investigation."
[6] Section 2518(1) provides in relevant part:

Each application for an order authorizing or approving the interception of a wire or oral communication shall be made in writing upon oath or affirmation to a judge of competent jurisdiction and shall state the applicant's authority to make such application. Each application shall include the following information:
(a) the identity of the investigative or law enforcement officer making the application, and the officer authorizing the application;
(b) a full and complete statement of the facts and circumstances relied upon by the applicant, to justify his belief that an order should be issued, including (i) details as to the particular offense that has been, is being, or is about to be committed, (ii) a particular description of the nature and location of the facilities from which or the place where the communication is to be intercepted, (iii) a particular description of the type of communications sought to be intercepted, (iv) the identity of the person, if known, committing the offense and whose communications are to be intercepted;
(c) a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous;
(d) a statement of the period of time for which the interception is required to be maintained. If the nature of the investigation is such that the authorization for interception should not automatically terminate when the described type of communication has been first obtained, a particular description of facts establishing probable cause to believe that additional communications of the same type will occur thereafter;
(e) a full and complete statement of the facts concerning all previous applications known to the individual authorizing and making the application, made to any judge for authorization to intercept, or for approval of interceptions of, wire or oral communications involving any of the same persons, facilities or places specified in the application, and the action taken by the judge on each such application; . . .
[7] Section 2518(3)-(6) provides:

(3) Upon such application the judge may enter an ex parte order, as requested or as modified, authorizing or approving interception of wire or oral communications within the territorial jurisdiction of the court in which the judge is sitting, if the judge determines on the basis of the facts submitted by the applicant that
(a) there is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in section 2516 of this chapter;
(b) there is probable cause for belief that particular communications concerning that offense will be obtained through such interception;
(c) normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous;
(d) there is probable cause for belief that the facilities from which, or the place where, the wire or oral communications are to be intercepted are being used, or are about to be used, in connection with the commission of such offense, or are leased to, listed in the name of, or commonly used by such person.
(4) Each order authorizing or approving the interception of any wire or oral communication shall specify
(a) the identity of the person, if known, whose communications are to be intercepted;
(b) the nature and location of the communications facilities as to which, or the place where, authority to intercept is granted;
(c) a particular description of the type of communication sought to be intercepted, and a statement of the particular offense to which it relates;
(d) the identity of the agency authorized to intercept the communications, and of the person authorizing the application; and
(e) the period of time during which such interception is authorized, including a statement as to whether or not the interception shall automatically terminate when the described communication has been first obtained.
(5) No order entered under this section may authorize or approve the interception of any wire or oral communication for any period longer than is necessary to achieve the objective of the authorization, or in any event longer than thirty days. Extension of an order may be granted, but only upon application for an extension made in accordance with subsection (1) of this section and the court making the findings required by subsection (3) of this section. The period of extension shall be no longer than the authorizing judge deems necessary to achieve the purposes for which it was granted and in no event for longer than thirty days. Every order and extension thereof shall contain a provision that the authorization to intercept shall be executed as soon as practicable, shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter, and must terminate upon attainment of the authorized objective, or in any event in thirty days.
(6) Whenever an order authorizing interception is entered pursuant to this chapter, the order may require reports to be made to the judge who issued the order showing what progress has been made toward achievement of the authorized objective and the need for continued interception. Such reports shall be made at such intervals as the judge may require.
[8] Movant has not specified which statute(s) might apply, nor what the limitations period is; our disposition of the limitations argument makes any such determination unnecessary, and we therefore do not reach this question.