**In the Matter of A WARRANT AUTHORIZING THE INTERCEPTION OF ORAL COMMUNICATIONS, etc.**

**Appeal of William J. CINTOLO.**

**No. 82–1881.**

United States Court of Appeals, First Circuit.

Argued April 8, 1983.

Decided May 31, 1983.

William J. Cintolo, pro se.

Wendy S. Collins, Sp. Atty., Dept. of Justice, Boston, Mass., with whom William F. Weld, U.S. Atty., and Jeremiah T. O'Sullivan, Sp. Atty., Dept. of Justice, Boston, Mass., were on brief, for the United States.

Before HAYNSWORTH,\* Senior Circuit Judge, BOWNES and BREYER, Circuit Judges.

PER CURIAM.

Appellant is the acknowledged target of a federal grand jury proceeding, and one of the subjects of court-authorized electronic surveillance of a certain apartment in Boston. As provided by statute, once the government finished its surveillance, the court told appellant that he had been overheard. *See* 18 U.S.C. § 2518(8)(d). He moved to inspect the surveillance records

\* Of the Fourth Circuit, sitting by designation.

pursuant to that statute, which states that the district court judge

> may in his discretion make available to such person or his counsel for inspection such portions of the intercepted communications, applications and orders as the judge determines to be in the interest of justice.

Appellant argued that, since he is an attorney, the government might have intercepted privileged attorney-client communications; he said he needed to inspect the documents, to prevent privileged materials from being placed before the grand jury. The district court examined the relevant records *in camera* and concluded that there was no improper interception. It found that the government had intentionally turned off the monitoring devices whenever an apparently privileged communication began. The court concluded that

> the importance of assuring the grand jury's investigation remains secret outweighs Attorney Cintolo's interest in discovering at this time the contents of his intercepted communications.

▮ Appellant first asserts a general point, namely, that he cannot prove that privileged communications were intercepted unless he can see the government's records. His practical problem arises, however, from the fact that Congress resolved the "secrecy/impropriety" dilemma to which he points by authorizing a district court to examine the records *in camera* and "in his discretion" to decide the issue. *See* 18 U.S.C. § 2518(8)(d). This procedure has been endorsed by the courts, *see, e.g., In re Lochiatto,* 497 F.2d 803, 808 (1st Cir.1974) (§ 2518(10)); *Application of the United States for an Order Authorizing Interception of Oral Communications At the Premises Known as Calle Mayaguez 212, Hato Rey, Puerto Rico,* 545 F.Supp. 1271, 1273 (D.P.R.1982); *Application of the United States for an Order Authorizing Interception of Wire and Oral Communications,* 495 F.Supp. 282, 284 (E.D.La.1980); *Application of the United States for an Order Authorizing Interception of Wire Communications,* 413 F.Supp. 1321, 1333 (E.D.Pa.1976); and

in general it is the recommended method by which to resolve disputes over confidentiality. *In re John Doe Corp.,* 675 F.2d 482, 490 (2d Cir.1982). Appellant has received whatever benefits § 2518 provides him, and he alleges no specific facts suggesting any abuse. Indeed, since he received from the district court the dates and times when he was "present on the premises being monitored," it would not be as difficult as appellant claims for him to make specific allegations to this court of invasion of the lawyer-client privilege, if any such invasions have taken place.

Moreover, even if it should later turn out, contrary to the district court's finding, that the government did invade the lawyer-client privilege, Cintolo's clients can refuse to answer questions from the grand jury based on privileged material, *see United States v. Calandra,* 414 U.S. 338, 346, 94 S.Ct. 613, 619, 38 L.Ed.2d 561 (1974); they can move to dismiss the indictment, *see, e.g., United States v. Rasheed,* 663 F.2d 843, 853–54 (9th Cir.1981); and any such evidence would be excluded at trial, *see* Fed.R. Civ.P. 501. *See also* 18 U.S.C. §§ 2515, 2518(5); *Scott v. United States,* 436 U.S. 128, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978) (suppression authorized where government fails to comply with requirement that interception of noncriminal matter be minimized). We find no abuse of discretion by the district court in refusing to allow defendant to inspect the government's records.

▮ Appellant makes one other claim of error. He argues that the district court should have heard the evidence of several reporters, whom he had subpoenaed to testify about newspaper and television stories they had written. He claims that if these unwilling witnesses had been forced to testify, he could have shown that the government had already breached the secrecy of its investigation by "leaking" stories to the press; hence, the need for secrecy in his case presumably would be diminished.

Appellant, however, did not explain to the court precisely how these witnesses would help him. The press stories themselves presumably could have been made

available to the judge and would likely have revealed the maximum extent (and thus the relevance) of any "leak." Moreover, appellant did not claim that the government had leaked information specifically about *him*. Under these circumstances, appellant, at a minimum, should have specified what he believed the witnesses would say and why their testimony would be material. *See Cohen v. United States,* 378 F.2d 751, 760–61 (9th Cir.1967). Instead, he relied upon conclusory allegations. We therefore find no error in the decision of the district court not to allow Cintolo to call his reluctant press witnesses.

For these reasons, the decision of the district court is

*Affirmed.*