**In re Arthur MARCUS, Appellant.**

**No. 74–1006.**

United States Court of Appeals,
First Circuit.

Argued Jan. 25, 1974.

Decided Jan. 31, 1974.

Robert F. Muse, Boston, Mass., with whom Michael J. Muse, Boston, Mass., was on brief, for appellant.

Marc Philip Richman, Atty., Dept. of Justice, with whom James N. Gabriel, U. S. Atty., George F. Kelley, Sp. Atty., Boston Strike Force, and John J. Robinson, Atty., Dept. of Justice, were on brief, for appellee.

Before COFFIN, Chief Judge, ALDRICH and CAMPBELL, Circuit Judges.

ALDRICH, Senior Circuit Judge.

This is an appeal from an order of the district court holding appellant Marcus in civil contempt for refusal to answer questions propounded to him before a grand jury after, following a grant of immunity pursuant to 18 U.S.C. § 2514, he had been directed to answer by the district court. 28 U.S.C. § 1826(a). His sole defense is that the questions asked were based upon an electronic surveillance allegedly improperly authorized by the district court. 18 U.S.C. § 2515, post. The alleged impropriety was lack of proper initial Attorney General, or specially designated Assistant Attorney General, authorization, 18 U.S.C. § 2516(1), the so-called Will Wilson defect, aspects of which are presently pending before the Supreme Court. United States v. Giordano, 4 Cir., 1972, 469 F.2d 522, cert. granted 411 U.S. 905, 93 S.Ct. 1530, 36 L.Ed.2d 194; United States v. Chavez, 9 Cir., 478 F.2d 512 (1973) cert. granted 412 U.S. 905, 93 S. Ct. 2292, 36 L.Ed.2d 969. At the hear-

ing before the district court the government conceded that this was a Will Wilson case,[1] as, indeed, is apparent from the face of the order, but took the position that Marcus was precluded, in connection with grand jury proceedings, from relying upon it. The court agreed. Pursuant to the command contained in 28 U.S.C. § 1826(b) we render our decision within 30 days.

Both parties point to Gelbard v. United States, 1972, 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179. In that case the Court reversed the decision in United States v. Gelbard, 9 Cir., 1971, 443 F.2d 837, and affirmed in In re Grand Jury Proceedings, Harrisburg, Pennsylvania (Egan), 3 Cir., 1971, 450 F.2d 199. The Ninth Circuit had held in a situation similar to the one at bar that a grand jury witness had no standing to complain of the illegality of his surveillance as a defense in a civil contempt proceeding. In *Egan* the district court had similarly precluded inquiry by the witness into the subject of electronic surveillance and held him in contempt, but the Third Circuit reversed and remanded for a hearing.

Although the Court affirmed the Third Circuit, and reversed the Ninth, the full import of that decision may be debatable. We start, accordingly, with the statutory scheme.

18 U.S.C. § 2515 reads as follows.

"Prohibition of use as evidence of intercepted wire or oral communications.

Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof *if the disclosure of that information would be in violation of this chapter."* (emphasis suppl.)

Our first question is the meaning and possible interrelationship of section 2518(10)(a).

"Any aggrieved person in any trial, hearing, or proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States, a State, or a political subdivision thereof, may move to suppress the contents of any intercepted wire or oral communication, or evidence derived therefrom, on the grounds that—

(i) the communication was unlawfully intercepted;

(ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or

(iii) the interception was not made in conformity with the order of authorization or approval.

Such motion shall be made before the trial, hearing, or proceeding unless there was no opportunity to make such motion of the person was not aware of the grounds of the motion. If the motion is granted, the contents of the intercepted wire or oral communication, or evidence derived therefrom, *shall be treated as having been obtained in violation of this chapter.* The judge, upon the filing of such motion by the aggrieved person, may in his discretion make available to the aggrieved person or his counsel for inspection such portions of the intercepted communication or evidence derived therefrom as the judge deter-

---

1. On the basis of this concession the court seemingly found that the interception order was not in fact properly authorized by the Attorney General or an Assistant Attorney General as provided in 18 U.S.C. § 2516(1), but ruled that this was irrelevant. Since we agree as to the irrelevancy, we do not pursue the warrantability of the finding. (Not every Will Wilson situation is, in fact, defective. *Cf.* United States v. Pisacano, 2 Cir., 1972, 459 F.2d 259, 263.) At the same time, we note, for what it is worth, that our reason for this ruling is not the one advanced by the government.

mines to be in the interests of justice." (emphasis suppl.)

We have held that because this latter section, unlike section 2515, does not mention grand juries, a prospective witness before a grand jury has no standing to be heard on a motion to suppress. Cali v. United States, 1 Cir., 1972, 464 F.2d 475. Such a conclusion does not, the Court held in *Gelbard*, mean that the witness, faced with contempt proceedings, cannot invoke the provisions of section 2515.

The Court, concededly, took only first steps.[2] It recognized the legislative history that tied the sections together,[3] but held that the fact that Congress may not have intended that a prospective grand jury witness be able to suppress the use of what the government had obtained by an unlawful surveillance did not mean he was deprived of all rights to refuse to give testimony when he himself is questioned as a result of what the surveillance had uncovered. This was not a determination of what those rights are, or that he, or any other witness, was intended to have greater substantive objections to testifying than those recognized as grounds for suppression in section 2518(10)(a). So far as possible we believe we should respect the legislative history tying sections 2515 and 2518(10)(a) together.[4] It would be singular, vis-a-vis others than grand jury witnesses, to give them rights to suppress under section 2518(10)(a)—indeed, to insist that they assert them as promptly as possible—and at the same time preserve a residue of further rights that they could assert at a later time. It would be equally singular to give grand jury witnesses greater defenses against testifying than the rights to suppress accorded other persons subjected to electronic surveillance, unless this grant was constitutionally deficient.

Turning to section 2518(10)(a), the three grounds stated for suppressing testimony are,

"(i) the communication was unlawfully intercepted;

(ii) the order or authorization or approval under which it was intercepted is insufficient on its face; or

(iii) the interception was not made in conformity with the order of authorization or approval."

We construe subsection (i) as covering, broadly, all common law or constitutional objections, electronic surveillance being a form of search and seizure, *see, e. g.,* Berger v. New York, 1967, 388 U. S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040, but, since statutory violations are embraced in the other sections, not statutory ones.[5] It is true that the subsections addressed to violations of the statutory procedure do not include every possible violation. Having, however, preserved all constitutional claims, we see no reason why Congress, having set up various additional procedural requirements for electronic surveillance, cannot determine what shall be the consequence of their violation, defining the occasions, and the extent, to which persons can assert and rely upon them. Limiting these occasions does not mean that the statute can

2. *See, e. g.,* Gelbard v. United States, ante, 408 U.S. at 61 n. 22, 92 S.Ct. 2357, *id.* at 70, 92 S.Ct. 2357 (Justice White, concurring).

3. For example, 408 U.S. at 61 n. 21, 92 S.Ct. at 2368. "This provision [§ 2518(10)(a)] must be read in connection with sections 2515 and 2517 . . . which it limits. It provides the remedy for the right created by section 2515", quoting S.Rep.No.1097, 90th Cong., 2d Sess., at 106.

4. Note, in addition to the legislative history detailed in *Gelbard*, the clauses in the two sections, ante, that we have italicized.

5. If the word "unlawfully" in subsection (i) were to read to include violations of the act, the remaining clauses would be surplusage, since the interception would be "unlawful" under the statute if either condition (ii) or (iii) were present. *Cf.* Jarecki v. G. D. Searle & Co., 1961, 367 U.S. 303, 307, 81 S. Ct. 1579, 6 L.Ed.2d 859. We therefore interpret this clause, in conjunction with the second and third clauses, to mean unlawful other than under the instant statute. *Cf.* United States v. Liddy, D.D.C., 1973, 354 F. Supp. 217, 219 n. 1.

be ignored with impunity and Congressional policy frustrated. Congress provided consequences for all violations even though they did not fall within section 2518(10)(a)(ii) and (iii). *See* 18 U.S.C. § 2511(1) (criminal penalties); 18 U.S.C. § 2520 (civil damages). We do not share Chief Judge Coffin's view that it would be unreasonable for it to think this adequate for certain types of possible deviations. Section 3504, upon which he relies, is couched in terms of procedure, not as a substantive enlargement of the scope of section 2518(10)(a). We turn, therefore, to a consideration of whether the present objections fall within section 2518(10)(a), rather than under a broader construction of section 2515 if standing alone.

■ ■ The Will Wilson defect, so called, if a violation at all, is a purely statutory violation and therefore is not within subsection (i). As to subsection (ii), section 2518(4)(d) requires that the order state the identity of the person authorizing the application for the surveillance. The order in the present case stated as follows.

"Special Agents of the Federal Bureau of Investigation . . . are authorized, pursuant to application authorized by the Assistant Attorney General for the Criminal Division of the Department of Justice, the Honorable Will Wilson, who has been specially designated by the Attorney General of the United States, the Honorable John N. Mitchell, to exercise the powers conferred on him by Section 2516 of Title 18, United States Code, to [carry out the surveillance]."

This statement is facially in compliance with the statute; only by an evidentiary proceeding could it be determined that Will Wilson was not so specially designated, or that he did not in fact authorize the application. Although it has been said that such defects make the order insufficient on its face, *e. g.*, United States v. Focarile, D.Md., 1972, 340 F. Supp. 1033, 1058–1060, aff'd sub nom. Giordano v. United States, ante, identification of the authorizing person is no

different from any other statement required on the face of the order, and if the underlying truth of that statement is allowed to be contested as a defect on the face of the order, this is a definition of "insufficient on its face" that we could not accept.

We find no facial defect on the present order, and while we recognize that a number of courts have gone beyond this restriction, we view the matter otherwise. Since, on rigorous questioning, appellant's counsel disclaimed any other defense to the order to testify, the order of contempt is affirmed. Mandate forthwith.

COFFIN, Chief Judge, dubitante.

While I cannot, with conviction, fault the court's reasoning, neither can I say that it rests comfortably with the clear indication that Congress was deeply interested in requiring strict accountability of the Attorney General for such technological invasions of privacy as he may deem necessary. Bearing in mind that any insulation afforded by a court order against attacks for defective internal processing applies under § 2518(10)(a) to trials as well as grand jury proceedings, I am concerned that authorizations made with little or no attempt to comply with the statute may go unchallenged, leaving only the uncertain sanctions of civil damages and criminal penalties. The objectives of privacy, accountability, and uniformity would see— in jeopardy.

It would seem to me there is an approach which is both workable and more faithful to the statute. The government has, under § 3504, the obligation, on request, to "affirm or deny the occurrence of the alleged unlawful act". *See* Gelbard v. United States, 408 U.S. 41, 52–55, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972). I see no reason why the government's obligation under this section should not include revealing any known defects of internal processing whether or not the government deems them legally significant My rationale is that an order stemming from a complete absence

of decision by the official charged with that responsibility should be vulnerable to attack. But the attack would not probe the truth or falsity of the government's representation. It would be the province of the court to adjudge whether the defect was substantial or not. Should the court view the defect as serious, it could invalidate the order; should the defect be found de minimis, the order would be enforced. Such a procedure, while protecting important interests, would not further delay grand jury proceedings.

Accordingly, I would have preferred to remand this matter to the district court for findings as to the precise nature of the "Will Wilson" defect in this case. We could then have determined whether, if error had been committed, it was harmless or substantial. If harmless, we would not have had to interpret the scope of § 2518(10)(a), leaving this to the Supreme Court. If substantial, we would have had to face the statutory interpretation question but could have adopted a less confining view. In any event, the chances of incarcerating a witness prematurely would have been minimized.