**In re Grand Jury Proceedings, Raymond SOTO–DAVILA.**

**Misc. No. 82–0088CC.**

United States District Court, D. Puerto Rico.

Jan. 20, 1983.

Judith Berkan, Juan Ramón Acevedo-Cruz, and Pedro Varela, Santurce, P.R., for Raymond Soto-Davila.

Daniel F. López-Romo, U.S. Atty., James G. Walker, Sp. Atty., U.S. Dept. of Justice, Hato Rey, P.R., for Government.

OPINION & ORDER

CEREZO, District Judge.

On January 5, 1983 a subpoena was issued on application of the United States commanding Mr. Raymond Soto-Dávila (witness) to appear in this district Court on

January 12, 1983 at 2:00 PM to testify before the grand jury and provide to the grand jury fingerprints, head hair samples, handwriting exemplars and to appear in a line-up. On January 12, 1983, after the witness' appearance before the grand jury the government filed a petition for an order of compliance with the grand jury subpoena, asserting that the witness appeared before the grand jury and, upon being ordered by the foreman to provide the information sought in the subpoena and to appear in a line-up, he refused. The grand jury then recessed until the next day at 9:00 AM, at which time the witness again appeared before it and again refused to provide this information upon being requested to do so. A hearing was then held on that same day on the petition for an order of compliance with the grand jury subpoena. The witness appeared represented by attorneys Juan Ramón Acevedo and Judith Berkan. The government was represented by Assistant U.S. Attorney James Walker. The foreman of the grand jury was present at said hearing. During the enforcement hearing the Assistant U.S. Attorney stated that what was required of the witness was to provide the exemplars specified in the subpoena and to appear in a line-up. He stated categorically that, although the subpoena also commanded the witness to appear to testify, the sole purpose of the subpoena was to obtain from him the exemplars requested and not his testimony. He was then asked to appear in compliance with the subpoena and was requested by the grand jury to submit exemplars and to participate in a line-up. No request to testify was made. He refused to comply with these requests. Upon his refusal the Court inquired as to his reasons for doing so. Petitioner's counsel then made an oral motion requesting that the Court order the government to make a showing of relevance of the information sought by the grand jury, arguing that when the subpoena is limited to producing exemplars the government has an affirmative duty to show that the information is necessary to the grand jury investigation and that there are no alternative means to obtain the information sought. The Assist-

ant U.S. Attorney in charge of the case then stated that the purpose of the investigation was to make an inquiry of an armed assault of a Wells Fargo armored truck in September 1982 during which a person was killed and that witnesses had identified petitioner as resembling an individual seen in the getaway car used during the robbery, that the car had been traced to a car rental and that the information contained in the car rental contract, filled out in handwritten form, had been ascertained to be false. The government's counsel stated that hair was found in the getaway car and that it was necessary to compare head hair samples of the witness with those found in the car and to compare his fingerprints to those lifted by the government agents. He also stated that although photos were shown to the witnesses who observed the robbery, these had expressed an interest in a line-up identification proceeding. The government further informed that it possessed none of the exemplars sought from the witness and that no electronic surveillance had been conducted.

After evaluating the government's statement of purpose of the investigation the Court denied petitioner's oral motion and ordered the witness to submit to the grand jury the fingerprints, head hair samples and handwriting exemplars requested and to participate in a line-up. Thereupon, he was instructed to return to the grand jury room and submit the information requested by the grand jury in compliance with the Court's order, and he was expressly advised that if he again refused to do so after being ordered, he had to appear before the Court immediately thereafter for a civil contempt hearing and, if found to be in contempt, he was advised that he was subject to confinement for the term of the grand jury, including extensions, and that in no event would such confinement extend for a period in excess of eighteen months, unless he elected to comply with the Court's order.

The witness then returned to the grand jury room and again refused to submit the information requested and to participate in a line-up, despite the Court's order to do so.

The contempt proceeding was then initiated. The government's attorney and the foreman stated that the witness had refused to submit the information requested before, after having been ordered to do so. When the Court inquired as to the reasons for his refusal the witness' attorneys requested an opportunity to develop their defenses to the civil contempt charge stating that they needed time to subpoena witnesses in support of their illegal electronic surveillance defense and to explore further the matter of a showing by the government of relevance of the information sought. The contempt hearing was continued at petitioner's request until January 20, 1983 at 9:00 AM. On January 14, 1983 the Court issued an order, which was to be notified by telephone and mail to the parties, requiring them to appear for a hearing in chambers on January 18, 1983 at 2:30 PM, at which time the attorneys for the witness were required to make a detailed offer of proof as to the evidence which would be presented by him in support of his showing of just cause for failing to comply with the Court's order requiring him to provide the exemplars requested by the grand jury and to participate in a line-up. The witness was also ordered to set forth the defenses he would raise during the civil contempt hearing which had been continued until January 20, 1983. Since the witness had made only a general, verbal assertion at the commencement of the contempt proceedings regarding the existence of illegal electronic surveillance, he was ordered to file by January 18, 1983, before noon, an affidavit or affidavits in support of his verbal assertion that illegal electronic surveillance motivated the grand jury investigation of him and that this constitutes a defense to his refusal to comply with the Court's order. Additionally, the order required the government to file a responsive affidavit or affidavits in compliance with the provisions of 18 U.S.C. Sec. 3504 and the requirements of our Circuit, set forth in *United States v. Doe (Marx)*, 451 F.2d 466 (1st Cir.1971).

Due to an error by the Clerk's Office, in the notification by telephone of the January 14, 1983 order, the parties were only informed initially that a meeting in chambers would be held on January 18, 1983 at 2:30 PM. It was only on the afternoon prior to the January 18, 1983 meeting in chambers that they received the January 14 order in the mail. Although the witness' attorneys were prepared to make their offer of proof during the conference in chambers, they were unable to meet the deadline previously fixed to file the affidavits in support of their illegal electronic surveillance defense. For this reason, the witness was granted until January 19, 1983 before noon to file the affidavit, which he has done, and the government was allowed until 5:00 PM of that day to submit its responsive affidavit.

During the meeting in chambers the witness' attorneys set forth the following defenses to civil contempt:

1—That the grand jury investigation and his subpoena as a witness were motivated by information obtained from illegal electronic surveillance.

2—That there was a need to require the government to make a greater showing of relevance of the information sought since the grand jury was being abused in this case by targeting the witness because of his political activities [1] and because the government already possessed the exemplars requested by the grand jury.

The attorneys for Mr. Soto-Dávila made their offer of proof in compliance with the January 14, 1983 order. They informed that they would offer the testimony of special agent Richard Held, in charge of the FBI, San Juan offices, Isis Torres de Conty and Gilberto Lugo, coworkers of the witness and Carmen Gautier Mayoral, a University of Puerto Rico professor of political sciences who, they asserted, is an expert on the growth of political repression and repression against the independence movement in Puerto Rico who would testify on

1. *In Re Grand Jury Proceeding (Schofield),* 486 F.2d 85 (3rd Cir.1973) and *In Re Pantojas,* 628 F.2d 701 (1st Cir.1980) were cited in support.

the basis of her research on how repression is used and of the existence of antirepression groups in Puerto Rico in relation to the federal grand jury and the federal court. They also informed that a subpoena duces tecum would be served on Mr. Held or the custodian of records of the FBI San Juan offices to produce documents, photos and surveillance logs concerning Mr. Soto-Dávila and the United Committee Against Repression ("Comité Unitario Contra la Represión") of which Mr. Soto-Dávila is a member.

Having examined the offer of proof made by the witness, the defenses which he has raised to the civil contempt charge, his affidavit in support thereof and the government's responsive affidavits the Court now determines the scope of its inquiry during the civil contempt hearing, the need for an evidentiary hearing of the type requested by the witness and the issues or defenses which can legitimately be raised by the witness in this type of proceeding.

### Electronic Surveillance

On January 18, 1983 the grand jury witness filed a Motion Renewing Earlier Motions, to wit, his application for an order to disclose informant filed on December 17, 1982 and his Motion for Search and Disclosure of Electronic or other Surveillance filed on that same date. The latter motion contained an all-embracing discovery request of "all voice records, tapes, mechanical or electrical recordings, logs, records, memoranda, letters and airtels of any electronic or other surveillance" which was accompanied by a brief affidavit sworn by the witness on December 17, 1982 in which he stated that during the months of April and May, up to December 1982 he "encountered many problems in the use of [his] telephone," that "often there was a great amount of interference in the lines making it difficult to hear or communicate with the other party," that he has need of this phone to call clients and lawyers and that he has been identified as a suspect in the matter under investigation, which gives him additional reasons to believe that he has been the subject of illegal electronic surveillance. In compliance with the Court's January 14, 1983 order, the witness filed another affidavit sworn on January 19, 1983 in which he repeats the assertions contained in his prior affidavit and adds that since December, specifically on December 29, 1982 and on January 7, 1983, employees or persons with uniforms of the Puerto Rico Telephone Company asked permission to check the phone lines passing through the back of his residence, that in the past few months he has encountered numerous problems with his phones while making phone calls connected with his political work for the United Committee Against Repression, that the calls were severed on many times on his first attempt to establish communications, that his friends have informed him that during the past few weeks it has been difficult to reach him on the phone since "either it rings and no one picks it up or rings for a longer time before being answered," and finally, that during the past two weeks he received three calls at his home during which no one spoke, although the phone rang and he and his wife heard when the phone was hung. The government filed two declarations pursuant to 18 U.S.C. Sec. 3504. One of these is made by María Villarruel, special agent of the FBI assigned to the investigation of an armed robbery of a Wells Fargo armored truck which occurred on September 16, 1982 in Carolina, Puerto Rico which resulted in the robbery of $175,-000 in cash and the death of one person. She states that since the day of the robbery she has personally conducted a substantial portion of the investigation and is aware of the investigation conducted by other FBI agents in relation to this case; that her investigation has led to the identification of the witness as a possible suspect; that none of the investigative procedures used by her to identify him as such involved the use of electronic surveillance; that she has checked the records of the FBI and at no time has the witness been the subject of electronic surveillance; that she also checked FBI records to see if any information has been provided to the FBI regarding electronic surveillance by other agencies

and none has been provided to it; that, as agent assigned to the case she knows that no FBI agents masqueraded as employees of the Puerto Rico Telephone Company to either visit Mr. Soto-Dávila's residence or to install any type of electronic surveillance device or to commit any type of electronic surveillance on him, at his residence or place of work and that she has checked with other agents investigating the case and knows of no phone calls made by them to his residence. The other government affidavit presented is that of Assistant U.S. Attorney James G. Walker, assigned to the grand jury investigation of the September 16, 1982 armed robbery of a Wells Fargo armored truck. Mr. Walker declares that he was present in the grand jury sessions of January 12, 1983 and January 13, 1983; that none of the exemplars requested of the witness are the result of electronic surveillance, "legal or illegal;" that he has reviewed the files of this case supplied by FBI officials and by the federal grand jury concerning this case; that he has discussed the matter of electronic surveillance with the relevant FBI officials; and that as a result of the above he knows that "no electronic surveillance was engaged in by the FBI in this case and that no federal or local law enforcement officers have furnished to the FBI the results of any electronic surveillance pertaining to this case or to Raymond Soto-Dávila." The U.S. Attorney further states in his declaration that the exemplars requested are the result of "legitimate investigative methods and that they are relevant to the grand jury investigation of the Wells Fargo robbery and for no other reason."

The defense of illegal electronic surveillance is one of the defenses available to a grand jury witness facing civil contempt charges to justify his refusal to obey a court's order to testify or to submit information to the grand jury requesting it. *Gelbard v. United States,* 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972); 18 U.S.C. Sec. 2515. Although the *Gelbard* ruling was the object of a vigorous dissenting opinion, our Circuit examined and applied it in its decision in *In Re Marcus,* 491 F.2d 901 (1st Cir.1974). Granted that such a defense is available to a witness, when the government denies in its response pursuant to 18 U.S.C. Sec. 3504 the existence of unlawful surveillance such denial disposes of the defense, if found to be sufficient. In the *Gelbard* dissent, it is noted that even assuming that the unlawful surveillance defense applies to witnesses summoned to testify before the grand jury, the denial by the government of the occurrence of the unlawful act should be sufficient for disposition of the case on such a claim. Our Circuit has recognized the need to proceed further where surveillance has been court authorized and even then scrutiny has been confined "to what is revealed by the authorizing documents, to test whether they suggest any unlawfulness in authorization or implementation." *In Re Lochiatto,* 497 F.2d 803, 808 (1st Cir.1974). Since the situation before us is one of denial of the existence of electronic surveillance, authorized or illegal, the question the Court must determine is whether the government's denial by means of affidavits complies with the sufficiency requirements outlined by our Circuit in *In Re Quinn,* 525 F.2d 222 (1st Cir.1975) and in *In Re Hodges,* 524 F.2d 568 (1st Cir.1975). See also: *United States v. Doe (Marx),* 451 F.2d 466 (1st Cir.1971) and *In Re Pantojas,* 628 F.2d 701 (1st Cir.1980). The Court finds that the affidavits submitted by the government in this case are identical to those which the Court found sufficient in *In Re Pantojas,* pursuant to 18 U.S.C. Sec. 3504. There the Court stated that: "The evil which section 3504 attempts to prevent is the use by prosecutors of information obtained through unlawful surveillance to solicit further evidence from a witness. The inability of the affiant to deny with certainty that any government instrumentality had subjected the witness to such surveillance seems to us irrelevant when the affiant can knowingly deny that the results of any such surveillance were passed to the investigators conducting the investigation before the grand jury." The Court acknowledged in its decision in *In Re Quinn* that when the government's denial

shows that those responding are in a position to ascertain whether or not the illegal activity occurred an evidentiary hearing will ordinarily not be required.

Having concluded that the government's denial meets the sufficiency requirements and that no evidentiary hearing is necessary in the circumstances of this case, the over-broad discovery request for surveillance material is uncalled for, since if the unlawful activity has been satisfactorily denied the existence of surveillance material is also destroyed by such denial. Accordingly the request for an evidentiary hearing and for disclosure of electronic surveillance and other materials is DENIED. Since the subpoena issued to the custodian of FBI records to produce surveillance logs is a discovery request of the same nature, the subpoena is quashed to the extent that it requires production of surveillance logs.

*Abuse of Process-Showing of Relevance*

During the meeting in chambers held on January 18, 1983 and in his motion filed on that same date, Mr. Soto-Dávila urges that the government must be required to make an adequate preliminary showing of relevance prior to any proceedings to find him in contempt and a further showing of the need for the requested information. The preliminary showing requested by the witness is based on a twofold contention: (1) that the grand jury process has been abused in this case for its investigation is motivated by the fact that he is an active advocate of the independence movement in Puerto Rico and the grand jury subpoena is being used to harass him for his political beliefs, and (2) that the government has all the information regarding the necessity for identification evidence which it seeks. Attached to his January 18, 1983 motion is the written statement that Mr. Soto-Dávila read to the grand jury when he was ordered by it to provide the exemplars requested in the subpoena and to participate in a line-up. This statement, which has not yet been translated to the English language, merely states that he is a militant member of the independence movement, the reasons for his political beliefs, accusations made against the U.S. Attorney's office and the FBI of judicial terrorism in trying to obtain fingerprints, hair samples and handwriting exemplars and to attempt to compel Puerto Rican patriots to submit to the indignity of a line-up. He concludes his statement by asserting that he will give them nothing, that they are wasting their time and that each refusal and non-collaboration before a federal grand jury represents the victory of the will of the Puerto Rican nation and that those who must provide exemplars and appear in a line-up are the U.S. Attorney, the FBI agents and other North American invaders in Puerto Rico. In addition to this statement allegedly in support of his "abuse of process" defense, Mr. Soto-Dávila has offered the testimony of Mrs. Carmen Gautier Mayoral, a political sciences professor at the University of Puerto Rico who would testify on the basis of her research on how repression is used in Puerto Rico and on the existence of 'local antirepression groups against the federal courts and the federal grand jury. He also offered the testimony of another witness who would testify as to Mr. Soto-Dávila's political activism in the past decade.

During the hearing on the petition for an order of compliance with the grand jury subpoena which was held immediately before the contempt proceedings, the Assistant U.S. Attorney stated that the grand jury's inquiry was directed at the armed robbery of a Wells Fargo truck on September 16, 1982 as a result of which money was stolen and a person lost his life. He further stated that Mr. Soto-Dávila had been identified by witnesses to this event as one of the persons seen in the getaway car, that this vehicle was traced to a car rental company and that the information provided in the contract turned out to be false. He informed that the evidence sought is needed to compare hair samples and fingerprints obtained with those of the witness, to compare his handwriting with that of the car rental contract and to obtain more reliable identification by use of a line-up. Representations as to the legitimacy of the investigation were also made by Mr. Walker in

his declaration made under penalty of perjury filed on January 19, 1983. This statement is considered by the Court to satisfactorily establish the legitimacy of the purpose of the grand jury investigation and the relevance of the information sought by means of the subpoena. The Court so found during that hearing and now reiterates that finding. Furthermore, the witness has not made a showing of an improper motive or purpose for the investigation other than making general conclusory assertions contained in his written statement read to the grand jury. The showing of a legitimate purpose of the investigation destroys his otherwise unfounded claim of harassment as a political activist. As stated in *In Re Maury*, 533 F.2d 727, 730 (1st Cir.1976) "[t]he First Amendment generally does not offer protection from a duty to testify before the grand jury" and that while harassment of a political dissident with no expectation that any evidence concerning the commission of a crime would be forthcoming would constitute an abuse, when that is shown not to be the situation, as in this case, there is no need to hold an evidentiary hearing in relation to charges of abuse of the grand jury. In this case the reasons for failing to comply with the subpoena which were given by the witness in his prepared statement are essentially that his political convictions impede him from collaborating with the grand jury, an instrument of "judicial terrorism." In the case of *In the Matter of the Subpoena Served Upon Bernardini Dohrn* cited by the witness in his memorandum, Judge Goettel stated: "a contemnor's self-serving statement that he or she will not cooperate should not, by itself, be considered by courts in determining whether to impose or continue to enforce an order of contempt. If it were, very few persons could ever be compelled to testify or cooperate." *In the Matter of the Subpoena Served Upon Bernardini Dohrn*, No. M–11–188, SDNY, January 4, 1983. Since Mrs. Gautier Mayoral's testimony and that of the other witness are offered to prove his affiliation to the independence movement and, as indicated by the witness' offer of proof during the meeting in chambers, to understand his statement before the grand jury and the reasons why he will not collaborate, having found legitimacy of purpose of the investigation, this evidence is not relevant to his showing of just cause.

In sum, a proper motive for the investigation having been shown, and no adequate showing of abuse of process having been made, no evidentiary hearing is required on this matter. We thus rule that the alleged abuse of process because of political harassment is not a valid reason for the witness' refusal to comply with the Court's order.

■ The second argument in support of the witness' request for a showing of relevance and in support of just cause for his refusal to comply is grounded on the allegation that *all* the exemplars requested are currently in the government's possession. To this end he offered the testimony of two co-workers who would declare that two FBI agents searched his desk at his place of employment where documents filled out by him and containing his signature and handwriting were found and the testimony of the custodian of FBI records to show possession by the government of the exemplars. At the moment he made the offer of proof the witness did not know if the two co-workers would testify that they saw the agents seize the documents found in his desk after the search. He also alleged, without offering proof, that since he is a government employee he must have submitted a certificate of good conduct of the Puerto Rico Police and in obtaining the same he must have been fingerprinted. We agree with the witness that if the government possesses the exemplars sought and, if these are adequate and sufficient, it would be oppressive and unfair to subject him to punishment on account of his refusal to submit them. Nevertheless, although an evidentiary hearing will be permitted for the limited purpose of showing government possession of the exemplars requested, this does not apply to the line-up. Accordingly, the testimony of the custodian of FBI records and of the co-workers shall be allowed but limited to the matter of possession of the exemplars by the government.

Wherefore, the scope of the contempt proceedings as established in this opinion shall govern the contempt hearing which was continued until January 20, 1983 at 9:00 AM.

SO ORDERED.