**In re GRAND JURY PROCEEDINGS,
John DOE, Appellant.**

**No. 92–1906.**

United States Court of Appeals,
First Circuit.

Submitted Nov. 3, 1992.

Decided Nov. 4, 1992.

Robert L. Sheketoff and Sheketoff & Homan, Boston, MA, on brief, for appellant.

A. John Pappalardo, U.S. Atty., Michael J. Tuteur and Ernest S. Dinisco, Asst. U.S. Attys., Boston, MA, on brief for appellee.

Before BREYER, Chief Judge, TORRUELLA and CYR, Circuit Judges.

PER CURIAM.

Agents of the federal government, in the course of conducting court-authorized electronic surveillance during a criminal investigation, intercepted communications which involved the appellant. The appellant later was called to testify before a federal grand jury sitting in the District of Massachusetts. He refused to do so, citing his Fifth Amendment privilege against self-incrimination. The government applied for and received a court order directing the appellant to testify and prohibiting the government from using his testimony or its fruits against him in a criminal prosecution. The appellant still refused to testify. The government petitioned for an order holding the appellant in civil contempt. 28 U.S.C. § 1826(a). It supported its petition with affidavits which said that the questions it intended to ask the appellant before the grand jury would be derived in part from the electronic surveillance mentioned above. The appellant then filed a "Motion for Disclosure of Electronic Surveillance Information" which asked the court to instruct the government to disclose certain information relevant to the government's request for permission to conduct that surveillance.

Invoking the need for secrecy to protect the ongoing grand jury investigation, the government produced only abridged copies of the documents requested. The court conducted a contempt hearing at which it ruled on the adequacy of the government's response. Before the hearing, the district judge had reviewed and compared the expurgated and unexpurgated versions of the documents. At the hearing, the judge ruled (a) that the government had "an obligation to preserve the secrecy of the grand jury," (b) that he did not see anything in the deleted material "that could be of value to [the appellant]," and (c) that after reviewing the unabridged documents he had concluded that the appellant "does not have any basis, that I can see, to challenge the validity and constitutionality of the [electronic surveillance]." The court ordered the appellant to testify, and when he again refused, judged him in contempt. An appeal followed.[1]

I

A grand jury witness who refuses to testify without "just cause" may be held

---

1. The district court issued the contempt order on July 14, 1992, and the appellant immediately filed his notice of appeal. This court docketed that appeal as No. 92–1859. On July 17, however, the appellant filed a motion for reconsideration in the district court. "[T]he filing of such a motion automatically cancels the effect of having earlier filed a notice of appeal." *In re Public Service Co. of New Hampshire*, 898 F.2d 1, 3 (1st Cir.1990). *See also Griggs v. Provident Consum-er Discount Co.*, 459 U.S. 56, 61, 103 S.Ct. 400, 403, 74 L.Ed.2d 225 (1982) (effect of Rule 59 motion on previously filed notice of appeal is that "appeal simply self-destructs"). Consequently, the appellant voluntarily dismissed appeal No. 92–1859 and filed this appeal. He also waived the requirement that recalcitrant witness appeals be decided within 30 days of the district court's contempt order.

in civil contempt, and confined until he agrees to testify, or, if he persists in refusing, for the life of the court proceeding or the term of the grand jury, but in no event longer than eighteen months. 18 U.S.C. § 1826(a). A showing that the questions put to the witness were based on illegal electronic surveillance constitutes "just cause" for his refusal to testify and precludes a finding of contempt. *Gelbard v. United States*, 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972); *Grand Jury v. Gassiraro*, 918 F.2d 1013, 1014 n. 1 (1st Cir. 1990) (per curiam). Thus, although 18 U.S.C. § 2518(10)(a) "gives no standing to a prospective grand jury witness to be heard on a motion to suppress, § 2515 allows such a witness to assert, in defense of a contempt proceeding, the grounds enumerated in § 2518(10)(a)(i), (ii), and (iii)." *In re Lochiatto*, 497 F.2d 803, 806 (1st Cir.1974).[2]

■ The witness' right to assert these defenses, however, is not unqualified. In particular, the availability of defenses challenging the legality of the electronic surveillance does *not* imply "unconditional accessibility to all facts which might be relevant...." *Id.* at 807. The documents used to obtain an "intercept" order, the order itself, and the documents reflecting the results of the electronic surveillance, may contain "sensitive material" which, if disclosed, would threaten the safety of witnesses or otherwise impede the grand jury proceedings or the government's investigation. *Id.*

■ In order to achieve the "triple objective" of minimizing delay, securing the government's interest in secrecy, and protecting the witness' right to assert his statutory defenses, in *Lochiatto* we established the following ground rules. First, if the government does not object "upon grounds of harm due to breach of secrecy," the witness is entitled to inspect these limited materials: the authorized application of the Attorney General or his designate, 18 U.S.C. § 2516(1), the affidavits in support of the intercept order, the order itself, and an affidavit submitted by the government indicating the length of time the surveillance was conducted. *Id.* at 808. No evidence need be provided the defendant for the purpose of litigating the issues of truth of statements made by affiants or the "minimization" of federal officials in monitoring conversations. *Id.*

■ Second, if the government *does* object to production on secrecy grounds, the district court must determine whether the secret information can be "successfully deleted or summarized and access to the excerpted material granted." *Id.* If the district court decides that "so much of the material is of a sensitive nature that revelation of any of it would prejudice the government, the court must then review the material in camera to determine the constitutional and statutory validity of the application and the court order based on the warrants, and compliance by the government with the court ordered time limits on surveillance." *Id.* The district court has "wide discretion" in implementing these procedures.

■ In this case, the district court gave the appellant all the protection that *Lochiatto* requires. It first ruled that the appellant "probably did not miss too much from the redacted to the unredacted, except ... names and places." We see no abuse of discretion in this conclusion, or in the district court's decision not to "summarize" the redacted material for the appellant.

At that point, having decided that the secret information could be "successfully" deleted (that is, deleted without destroying the appellant's ability effectively to prepare a defense), the court might have concluded its discussion, leaving it to the appellant to frame his own challenges to the legality of the electronic surveillance. Instead, the district judge went on to perform the latter

---

**2.** Under 18 U.S.C. § 2518(10)(a), an "aggrieved person" may challenge an intercepted wire or oral communication on the grounds that (i) the communication was unlawfully intercepted, (ii) the order of authorization or approval under which it was intercepted is insufficient on its face, and (iii) the interception was not made in conformity with the order of authorization or approval.

half of the *Lochiatto* analysis, saying that he had reviewed the unabridged documents *in camera*, and that

> [t]he Attorney General's authorization has been provided. The justification has been provided. The affidavit has been provided.... [The appellant] does not have any basis, that I can see, to challenge the validity and constitutionality of the process. The electronic surveillance was conducted pursuant to a court order and was authorized. That is not a basis for [the appellant] to refuse to testify.

■ We can find no fault with this conjunctive approach. It provided the appellant with an added layer of protection, assuring him that the district court had reviewed the deleted material with his statutory defenses in mind. Where, as here, the deletions were fairly extensive if not qualitatively significant, the court's caution was laudable, and certainly not abusive of its wide discretion.[3]

## II

After the district court issued its contempt order, the appellant filed a notice of appeal, then moved for reconsideration in the district court. At the government's urging, the district court denied the motion on the ground that the filing of the appeal had divested it of jurisdiction to reconsider the contempt order. The government now concedes that this position was mistaken. But, whether or not the district court *should* have addressed the motion on its merits, we need not remand now for it to do so: we have considered the issues raised in the motion and find them to be of no aid to the appellant's cause.

■ The motion to reconsider contained two substantive challenges to the legality of the electronic surveillance. Both concerned the memoranda through which responsible officials of the Justice Department authorized federal prosecutors in the field to apply for an intercept order. The record contains three such memoranda, one authorizing the initial application and two authorizing successive applications for extensions of the order. Each memorandum went out under the name of Robert Mueller, the Assistant Attorney General in charge of the Criminal Division, and each contained a line for Mr. Mueller's signature, but each memorandum was in fact signed by a different Deputy Assistant Attorney General in the Criminal Division: the first by Robert Bucknam, the second by Mark Richmond, the last by John Keeney.

Out of this clay the appellant molded his arguments. First, he contended that the judge who issued the intercept order and its extensions "was misled as to the official who authorized the application[s]" because the authorization memoranda "purported" to be from Assistant Attorney General Mueller, but were in fact signed by the various Deputy Assistants. Second, he noted that 18 U.S.C. § 2516(1) empowers only those Deputy Assistants who have been "specially designated by the Attorney General" to authorize applications for intercept orders. The Attorney General's designation order under which these Deputy Assistants acted, No. 1348–89, named no names and instead designated by title "any Deputy Assistant Attorney General of the Criminal Division." Because the order thus designated *every* Deputy Assistant in the Criminal Division, the appellant said, it failed to "specially designate" any particular individual.

---

3. The appellant's brief focuses on the district court's decision to withhold the government's affidavits "concerning the existence of other surveillances." It is true that when a witness challenges the legality of the government's electronic surveillance, the government must "affirm or deny the occurrence of the alleged unlawful act," 18 U.S.C. § 3504, and include in its response "an explicit assurance that all agencies providing information relevant to the inquiry were canvassed." *In re Quinn*, 525 F.2d 222, 226 (1st Cir.1975). The appellant contends that the district court should not have withheld the affidavits containing this assurance. We have examined the materials in question: they contain potentially-sensitive information about the nature and scope of the government's investigation, and we therefore see no abuse of discretion in the district court's decision to examine them *in camera*. We find, moreover, that the affidavits gave the necessary assurance and adequately showed that the grand jury questions put to the appellant were not derived from any other electronic surveillance source.

We recently affirmed the validity of a structurally-identical authorization memorandum. In *United States v. Citro*, 938 F.2d 1431 (1st Cir.1991), the authorization memorandum, like the memoranda at issue here, carried a signature line for the Assistant Attorney General in charge of the Criminal Division, but actually was signed by one of his Deputy Assistants, who had been identified by title but not by name in the then-current Attorney General's designation order. *Id.* at 1435.

In *Citro*, we rejected the appellant's contention that designation by title rather than name was insufficient:

> Section 2516(1) does not state that the Attorney General must designate officials by name. Identification by position is entirely consistent with the legislative history, which indicates that the purpose of the statute was to ensure that intrusive electronic eavesdropping be authorized only by a limited group of responsible federal officials. The statute requires that each of the officials be able to trace his or her explicit authority, by designation, to the Attorney General, an official who, by virtue of presidential appointment and Senate confirmation, is publicly responsible and subject to the political process. The statutory limitations allow the responsible persons to be identified and encourage consistency in the policy with which the electronic surveillance power is used. The Attorney General's designation of individuals by title is sufficient to ensure the goals of accountability, identification and consistency. We see no reason to construe the statute to impose a technical requirement that the individuals be designated by name provided their identities are clearly ascertainable at any given time.

*Id.* at 1435–36 (citations omitted). *See also United States v. Torres*, 908 F.2d 1417, 1422 (9th Cir.1990); *United States v. Pellicci*, 504 F.2d 1106, 1107 (1st Cir.1974) (per curiam).

In *Citro* we did not say in so many words that an authorization memorandum is valid when it contains an empty signature line for the Assistant Attorney General but goes out over the signature of a Deputy Assistant. Such a ruling, however, was implicit in our general endorsement of the authorization memorandum. In the case at hand, at any rate, we find no fault in the arrangement of signatures on the authorization memoranda. The district judge who issued the intercept order and its extensions could not have been "misled" in any material sense by the presence of Assistant Attorney General Mueller's printed name under the signature line. The signatures on the memoranda correctly reflected the identities of the persons who actually gave the authorizations (i.e., Deputy Assistants Bucknam, Richard and Keeney)—each of whom had the statutory power to do so by virtue of the Attorney General's "special designation." *Cf. United States v. Chavez*, 416 U.S. 562, 94 S.Ct. 1849, 40 L.Ed.2d 380 (1974) (failure to correctly identify person authorizing application does not render electronic surveillance illegal where person who actually authorized application had power to do so).

The judgment of contempt is *affirmed*.